CLARA V. FRENCH, executrix, *vs.* THOMAS F. MANNING & another.

Suffolk. January 11, 1921. — March 3, 1921.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & JENNEY, JJ.

*Agency*, Scope of employment.

At the trial of an action of tort by the executrix of a will for causing personal injuries to and the death of the testator, it appeared that the defendant owned and operated two groceries, which were a mile and a half distant from each other; that at the larger of the stores motor trucks were used for the delivery of goods and to carry goods to the smaller store, while at the smaller store only horse drawn vehicles were used; that a number of employees at the larger store were licensed operators of motor vehicles, and that the plaintiff's testator was killed by being run into by a motor truck driven by one who was employed at the smaller store. The defendant testified that none but licensed operators were to take the trucks, that "there was a standing order all the time." The driver testified that in about four months he had driven about six hundred miles, one hundred to one hundred fifty miles being given solely to teaching, and that one of the licensed operators whom the defendant employed always was with him. There was other evidence, which was contradicted, of occasions when he drove the motor vehicle on the defendant's business without any licensed operator accompanying him. On the night of the accident the driver had finished his work at the smaller store when it was locked up at half past nine, had ridden to the larger store in a horse drawn wagon, then had seen a fellow employee, a licensed operator, who had just put one of the trucks in a garage and who, stating that he wanted to get to a barber shop which was about to close, asked him to take the other car to the garage. He did so, started the car without assistance and drove it alone to the garage, where the accident occurred. *Held*, that

(1) A finding was warranted that the defendant knew that the driver had been taught by his fellow employees to drive the car and that he had driven it alone upon the defendant's business;

(2) A finding was warranted that the driver never had been forbidden to drive the car alone excepting by the general order of the defendant and that that general order had been waived as to him;

(3) A finding was warranted that the driving of the car by the driver after his hours of regular employment was not a mere friendly act of accommodation to a fellow employee, but was an act done in an effort to be useful to his employer;

(4) A finding was warranted that, at the time of the accident, the driver was acting within the scope of his employment.

TORT, by the executrix of the will of George L. French for the causing of conscious suffering and the death of the testator. Writ dated April 21, 1919.

In the Superior Court the action was tried before *Hall,* J. Material evidence is described in the opinion. At the close of the evidence, the defendants moved that a verdict be ordered in their favor. The motion was denied. The jury found for the plaintiff in the sum of $2,500; and the defendants alleged exceptions.

*J. M. Graham,* for the defendants.
*John Jackson Walsh,* for the plaintiff.

PIERCE, J. This is an action of tort brought to recover damages on account of the death of one George L. French who is alleged in the declaration to have been struck and killed on the night of February 24, 1917, by an automobile driven negligently by an employee of the defendants, Bernard W. Fay. The case is before this court after a verdict for the plaintiff, on exceptions taken by the defendants, at the close of the evidence, to the denial of a motion in writing that the court order a verdict for the defendants. The defendants admit that there was evidence of negligence, and of the due care of the plaintiff's testator, sufficient for the submission of the case to the jury on those two issues. The motion of the defendants now rests solely upon their assumption that the evidence does not warrant a finding by a jury that the driver was in the employment of the defendants at the time of the accident and injury.

The evidence is uncontradicted that the defendants on the day of the accident were the owners of a store and carried on a grocery at Hyde Park Avenue, Boston, under the name of Blakemore Market, and also that they owned and carried on another grocery on Belgrade Avenue a mile and one half distant from the Blakemore Market under the name of the Belgrade Market. The evidence is also undisputed that Fay, in the capacity of a

delivery clerk, was in the employment of the defendants at the Blakemore Market from 1912 until some time in 1915, when he left; that he re-entered their employment in the same capacity in November, 1916, and thereafter worked at the Belgrade Market. In connection with the business at the Blakemore Market the defendants used automobile trucks to deliver goods to their customers and to transfer goods to their smaller store, the Belgrade Market. A number of clerks at the Blakemore Market, including a brother of one of the defendants, Charles S. Manning, and one Amos Boudreau, were licensed operators of the cars. At the Belgrade Market no automobiles were used in connection with the business, the deliveries of goods being made with horse drawn vehicles. John J. Manning, one of the defendants, testified, "that his instructions were that nobody except the operators, the legal drivers, were to take the trucks; there was a standing order all the time. No one except those who had licenses were to take the trucks."

As regards Fay's use and authority to use the trucks, he testified that he first began to operate a truck in December, 1916, when he went back to work for them the last time; that the truck was used in connection with the business at 439 Hyde Park Avenue (the Blakemore Market); that he sometimes drove the truck from one store to the other carrying groceries and meats and stuff; that sometimes he took the car out to practise operating it, "that he had run [the truck] about six hundred miles; . . . that of the six hundred miles he drove the truck while learning, about one hundred to one hundred and fifty miles were given solely to teaching;" "that all the time he had one of the men on the car with him in every instance; that there never was an instance when one of the men was not with him; that William and Charlie Manning both taught him how to run the car; that he soon learned how to run the car; both cars were [of] the same make and he could run both of them." In this connection a witness, Hilderbrand, testified that he "knew Fay" that "he saw him working about the store and on the Ford car and was riding around taking orders and delivering orders and driving the car; that he saw him on the machine with different people, with boys when nobody else but the boys and himself were present." A witness, James Worth, testified "that he had known Fay since a small boy; . . . that he

knew in February, 1917, that Fay was working for Mannings; that about that time he saw Fay several times driving a truck; that he saw the same truck at Mannings' store, and also down in the Woodbourne section; that he was delivering orders at the time; that he saw him leaving the store in the truck, running it." He further answered "No" in response to the question, "Now at any of those times that you saw him — did you — were there times that you also saw him in company with others on the truck?" A witness, Andrew J. O'Neal, testified that he saw Fay use what they called the "'new truck;' that that was the same one that was in the accident; that when he was carrying goods from the Blakemore Market to the Belgrade Market, John, William and Charles Manning were in the Blakemore Market." The force of the testimony of the last named witness was somewhat broken in cross-examination and was absolutely contradicted by the defendants and other witnesses in respect to their testimony that Fay had driven the car in execution of the business of the defendants on several occasions unaccompanied by a licensed driver or other clerk of the defendants.

The testimony disclosed that Fay on the night of the accident finished his day's work at the Belgrade store when it was locked up at nine-thirty; that he rode over to the Blakemore store in a wagon driven by a delivery clerk in the Belgrade store; that he went into the store, talked with William Manning, and then went to the sidewalk in front of the store; that he then saw Charles Manning who had just put one of the trucks in the garage; that Charles told him the barber shop closed soon and he wanted to get a shave, and asked him to take the other machine to the garage; that he got into the car alone, started it without assistance and drove to the garage.

Upon the evidence the jury could find that the defendants knew Fay had been taught by other employees to drive the automobile and that he had driven it alone in the execution of their business. They could also properly find that Fay was never forbidden to drive the car in any manner other than by the general order of one of the defendants, Manning, above recited, and in view of all the evidence could well find that that order was a dead letter or that obedience by Fay was waived. Finally the jury could find warrantably that the services which Fay rendered

beyond the usual hours of his employment were rendered by an employee anxious to be useful and not as a mere act of friendly accommodation to his fellow clerks.

It results that the jury could warrantably find that the driving of the automobile was the act of a servant of the defendants and was within the scope of his employment.

*Exceptions overruled.*